## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JOYCE M. HUFFMAN-WHITE,

    Plaintiff,

v.                          CASE NO:

FEDERATION OF APPALACHIAN HOUSING ENTERPRISES, INC.,

d/b/a FAHE,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JOYCE M. HUFFMAN-WHITE, (hereinafter "Plaintiff" or "Ms. Huffman-White"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, FEDERATION OF APPALACHIAN HOUSING ENTERPRISES, INC. d/b/a FAHE (hereinafter "Defendant," or "Fahe") and alleges:

### INTRODUCTION

1.    Plaintiff, Joyce M. Huffman-White, brings this action against Defendant, Federation of Appalachian Housing Enterprises, Inc. d/b/a Fahe ("Fahe" or "Defendant"), her former employer, seeking to recover damages

for unlawful discrimination based on age, disability, race, and sex/gender, as well as interference with her rights and retaliation, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA"); and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.      As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment, and ultimately terminated her employment because of her age (53), disability, race (White), and sex/gender (Female). Plaintiff further alleges that Defendant interfered with her rights under the FMLA and retaliated against her for exercising those rights, and that Defendant retaliated against her for engaging in protected activity under the ADEA, ADA, Title VII, and the FCRA, all in violation of her rights thereunder.

3.      As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages including, but not limited to: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer the loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.      Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6.      This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court for the Middle District of Florida, Fort Myers Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to

Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in DeSoto County, Florida, where Plaintiff resided and performed her job duties remotely on behalf of Defendant at all times relevant hereto.

## PARTIES

8.     Plaintiff, Joyce M. Huffman-White, is a fifty-three-year-old White female who, at all times material herein, resided in DeSoto County, Florida. Plaintiff has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and, as a direct result of Defendant's unlawful conduct, was prescribed Buspirone for stress and depression and sought professional counseling related exclusively to her workplace treatment at Fahe.

9.     Plaintiff is a member of a class protected against discrimination and retaliation based on her age (53), sex/gender (Female), race (White), and disability under the ADEA, the ADA, Title VII, the FMLA, and the FCRA.

10.     During the period from on or about May 5, 2019, until July 14, 2025, Defendant employed Plaintiff in various positions within its Loan

Servicing Department, including as a Default Specialist, Senior Loan Default Specialist, and ultimately as a Loan Servicing Investor Representative, all performed remotely from Plaintiff's residence in DeSoto County, Florida.

11.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.    At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADEA, the ADA, Title VII, the FMLA, and the FCRA.

13.    The Defendant, FEDERATION OF APPALACHIAN HOUSING ENTERPRISES, INC., is a nonprofit corporation doing business as "Fahe" and "Just Choice Lending," with its principal place of business located at 319 Oak Street, Berea, Kentucky 40403. Defendant's registered agent in Florida is Incorp Services, Inc., located at 3458 Lakeshore Drive, Tallahassee, Florida 32312.

14.    At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout DeSoto County, Florida, and within this District and Division, including by employing remote workers such as Plaintiff from within this District.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the ADEA, the ADA, Title VII, the FMLA, and the FCRA.

16. Accordingly, Defendant is liable under the ADEA, the ADA, Title VII, the FMLA, and the FCRA for the unlawful discrimination, interference, and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On January 22, 2026, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, discrimination based on her age, disability, race, sex, and retaliation (EEOC Charge No. 510-2025-08161).

19. On January 30, 2026, the EEOC issued Plaintiff a Notice of Right to Sue (Dismissal and Notice of Rights) in reference to her Charge of Discrimination (EEOC Charge No. 510-2025-08161) against Defendant.

20. The EEOC issued Plaintiff a Notice of Right to Sue concerning the same dual-filed charge. Accordingly, Plaintiff has satisfied the administrative prerequisites applicable to her claims under the Florida Civil Rights Act and is entitled to pursue those claims in this action pursuant to section 760.11, Florida Statutes.

21. Plaintiff's claims arising under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., are not subject to the administrative exhaustion requirements applicable to her claims under the ADEA, ADA, Title VII, and the FCRA, and may be brought directly in this Court.

22. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23. On or about May 5, 2019, Plaintiff Joyce M. Huffman-White began her employment with Defendant Federation of Appalachian Housing Enterprises, Inc. d/b/a Fahe ("Fahe" or "Defendant"), initially through a temp-to-hire arrangement with Robert Half staffing agency. Plaintiff was subsequently hired directly by Defendant as a Default Specialist / Loan Servicing Specialist within Defendant's Loan Servicing Department (Department 005040). From the outset of her employment, Plaintiff

performed all of her job duties remotely from her residence in Florida, an arrangement that was expressly authorized in writing by Defendant.

24.     Over the course of her approximately six-year tenure, Plaintiff was promoted and advanced through progressively more senior roles within Defendant's Loan Servicing Department, including serving as a Senior Loan Default Specialist and, beginning in or around September 2024, as a Loan Servicing Investor Representative. At the time of her termination on July 14, 2025, Plaintiff was earning $28.87 per hour, with an annualized salary of approximately $47,500, plus employer-paid medical, dental, and vision benefits valued at approximately $600.00 per month.

25.     Throughout her employment with Defendant, Plaintiff consistently met or exceeded all legitimate performance expectations. Her performance evaluations from 2020 through 2024 uniformly reflected positive results, with no documented disciplinary history of any kind prior to April 2025. Notably, Plaintiff's March 2024 semi-annual review described her as "a hard working employee who always delivers high-quality work on time" and "a valuable asset to the Fahe Team," and her 2024 annual review recognized that she played "a pivotal role" in the organization. Plaintiff also received consistent recognition and commendations from external clients,

investors, and community partners, including positive feedback from Haley Terry, Executive Director of Appalachia Habitat for Humanity; homeowner Brittany Magee; and customer Salvador Garcia, among others. Plaintiff was additionally assigned responsibilities beyond her original job description, including REO property management, without apparent compensation adjustment.

26.    On February 23, 2024, Raven Spivey, Director of Default Management, confirmed in writing — copying Brittney Murphy and Defendant's President Sara Morgan — that there were "no issues" with Plaintiff continuing to work remotely from Florida. In or around November 2024, Plaintiff permanently relocated to Florida, selling her Kentucky home. Plaintiff notified Defendant's HR department of her updated address on February 5, 2025, reflecting her new residence at 12144 SW Egret Circle #305, Lake Suzy, Florida 34269 (DeSoto County). Defendant's full awareness of Plaintiff's Florida residence is further demonstrated by the fact that Defendant paid for Plaintiff's airfare and hotel accommodations to attend the company's Christmas party in Kentucky in December 2024.

27.    At all times material herein, Plaintiff's direct supervisor was Bethany Taylor-Gilbert, Vice President of Loan Servicing. Taylor-Gilbert is

approximately fifteen (15) years younger than Plaintiff. From at least early 2025, Taylor-Gilbert subjected Plaintiff to disparate treatment, heightened scrutiny, and differential standards not applied to younger and/or male colleagues. Among other things, Taylor-Gilbert directed Plaintiff's teammates Molly and Melodie to "never go to [Plaintiff] for anything because [she] would not be helpful, and [she] was mean" — conduct that directly undermined Plaintiff's professional standing and contributed to a hostile work environment. Taylor-Gilbert also repeatedly interrupted Plaintiff mid-sentence during one-on-one interactions and team meetings, and denied Plaintiff access to training resources and professional development opportunities made available to younger colleagues. Specifically, Taylor-Gilbert told Plaintiff to watch TikTok videos to learn Excel rather than providing Plaintiff with actual instructor-led training, while younger colleagues such as Shelly Coleman received formal training, certifications, and professional accommodations not offered to Plaintiff.

28.    Plaintiff is a fifty-three (53)-year-old White female, a member of multiple protected classes under the ADEA, ADA, Title VII, the FMLA, and the FCRA. In or around May 2024, Plaintiff's co-worker Brittany Masters informed Plaintiff that members of management had asked Masters to "find

something" on Plaintiff — evidencing that Defendant had already begun building a pretextual case for adverse action against her well before any purported performance concerns arose.

29. On April 9, 2025, Plaintiff submitted a formal written compliance complaint to her supervisor, Taylor-Gilbert, regarding co-worker Shelly Coleman's practice of working outside of established business hours without utilizing PTO, which left the department short-staffed. Rather than addressing the underlying conduct, Defendant responded by penalizing Plaintiff. On April 16, 2025, HR Representatives Bridget Durham and Kyle Rounick were unexpectedly added to a subsequent call, and Plaintiff was verbally warned not to monitor co-workers' conduct. Plaintiff was never provided with a written copy of this verbal warning during her employment; indeed, the documentation was only disclosed to Plaintiff's prior counsel during pre-litigation settlement negotiations. Despite issuing this warning, Defendant's own records acknowledged that "your work performance meets expectations" at that time. Also on April 16, 2025, Defendant changed company policy regarding after-hours work — a direct and immediate response to Plaintiff's April 9, 2025 complaint.

30.    On April 16, 2025, as further corrective action stemming from Plaintiff's April 9, 2025 complaint, Defendant required Plaintiff to attend mandatory Emotional Intelligence Coaching ("EIC") sessions. On April 21, 2025, Plaintiff scored between 90 and 100 out of 100 on the Emotional Intelligence ("EI") assessment administered as part of those sessions, placing her in the "Very High EI" category — the top tier, ranging from 84 to 100. Notwithstanding this exceptional result, Defendant continued to require Plaintiff's participation in EIC sessions as though she had performed poorly.

31.    On April 30, 2025, Plaintiff initially inquired about intermittent FMLA leave in connection with her then-domestic partner of more than nine (9) years, whom Defendant recognized for employee-benefits purposes by covering him under Plaintiff's employer-sponsored dental and vision insurance. Plaintiff's treating physician subsequently determined that Plaintiff qualified for FMLA leave based on her own serious health condition, rather than to care for her domestic partner, and completed the FMLA medical certification on that basis. The stress and anxiety Plaintiff was experiencing, including the effects of her work environment, significantly affected her health and sleep. Defendant's administration of Plaintiff's FMLA leave was irregular and improper from the outset. HR Representative Kyle

Rounick explicitly told Plaintiff that she would not be informed of "how the system works" until after she had already submitted her medical documentation. Defendant also provided Plaintiff with outdated guidance referencing an expired COVID-era emergency leave provision—specifically, Section 5110(E) of the Emergency Paid Sick Leave Act/FFCRA—as the purported basis for its documentation requirements. All required FMLA documentation was submitted by Plaintiff by May 15, 2025. The completed FMLA paperwork was returned by Plaintiff's physician on May 19, 2025, and an FMLA Designation Notice (Reference Number 47662457) was issued by ADP TotalSource on May 19, 2025, approving Plaintiff's intermittent FMLA leave, based on her own serious health condition, retroactively from April 1, 2025, through April 1, 2026.

32.    On May 9, 2025, supervisor Taylor-Gilbert and HR Representative Rounick made unauthorized changes to Plaintiff's timecard without her knowledge or consent, adding vacation time that Plaintiff had not requested. On May 12, 2025, Plaintiff was required to use eighteen (18) minutes — 0.3 hours — of flex time to reach a full forty-hour workweek, under a recently implemented policy change inconsistent with prior company practice. These unauthorized timecard alterations and forced PTO

usage continued throughout Plaintiff's remaining employment and are documented in Plaintiff's timecard history from January through July 2025.

33.    On May 19, 2025 — the very same day that Plaintiff's FMLA paperwork was approved — HR Specialist Bridget Durham removed the paid leave benefit from Defendant's employee handbook without providing any employee-wide notification. Plaintiff possesses timestamped screenshots confirming both the original version of the handbook (reflecting pages 41–42, which provided all employees with up to eighty (80) hours of paid leave for any requested leave of absence, including FMLA leave) and the revised version uploaded by Durham at 10:51 a.m. on May 19, 2025. This paid leave benefit was never properly offered to Plaintiff; instead, she was directed to exhaust her personal PTO.

34.    On May 20, 2025, supervisor Taylor-Gilbert repeatedly attempted to discuss Plaintiff's FMLA leave and medical condition during a one-on-one meeting, despite Plaintiff's repeated objections and requests that the discussion stop. Plaintiff informed Taylor-Gilbert that if the discussion continued, she would end the meeting. On the same date, HR Specialist Durham sent Plaintiff an email in which Durham acknowledged that her own prior response regarding FMLA administration "contained errors," yet

characterized Plaintiff's good-faith corrections as "a bit challenging" and suggested that Plaintiff's legitimate FMLA inquiries should be addressed as a "coaching opportunity." Durham stated: "This scenario provides a great learning moment that we can explore during our coaching sessions." Fahe's FMLA leave policy was also formally revised on May 20, 2025 — the same date as these events. Furthermore, also on May 20, 2025, Taylor-Gilbert provided Plaintiff with positive feedback, stating: "the collaborative stuff done so far has helped with the rapport within the team" — positive feedback delivered just nine (9) days before Plaintiff's first-ever negative performance evaluation.

35.   On May 22, 2025, Plaintiff submitted a formal written complaint to Defendant's President, Sara Morgan, requesting to discontinue EIC participation due to Defendant's inappropriate use of her FMLA situation as a coaching opportunity and raising concerns about FMLA interference and retaliation. On May 27, 2025, COO Jenn Cerecedes approved Plaintiff's discontinuation of the EIC coaching program in writing — an implicit acknowledgment that the use of Plaintiff's FMLA inquiries as behavioral coaching material was improper.

36. On May 29, 2025, Plaintiff received her first-ever negative performance evaluation in her six-year tenure with Defendant. She was scored a "1" — the lowest possible rating, defined as "Does Not Meet Expectations." The evaluation purported to cover an entire year of performance but focused exclusively on the period beginning April 1, 2025 — the precise date on which Plaintiff's FMLA leave commenced. The evaluation included subjective and disparaging characterizations, including describing Plaintiff's improvements as merely "superficial." Inconsistent with how other employees' evaluations were conducted, the meeting was attended not only by Taylor-Gilbert but also by Defendant's VP of Finance, Laura Meadows, whose presence served no apparent legitimate performance evaluation purpose. Plaintiff characterized the review as "retaliatory" in her written response and did not sign the accompanying Performance Development Plan ("PDP"). The PDP was classified as "Corrective" (not Developmental), imposed a thirty (30)-day timeline, contained no specific examples, dates, incidents, or measurable objectives, and provided no meaningful guidance for improvement. The document was later signed solely by Taylor-Gilbert and COO Cerecedes on May 30, 2025.

37.     On June 13, 2025, Plaintiff submitted a formal written complaint to both President Sara Morgan and CEO Jim King, detailing a pattern of FMLA interference, retaliation, harassment, hostile work environment, and discriminatory treatment. On June 17, 2025, an internal investigation was conducted by Jill Moravitz, an investigator with ADP TotalSource. During the investigation, Taylor-Gilbert made a false claim that Plaintiff had failed to respond to a Microsoft Teams message — a misrepresentation directly contradicted by timestamped electronic evidence — and this misrepresentation was never corrected. On June 26, 2025, Plaintiff followed up directly with Moravitz, providing supporting documentation. On the same date, colleagues Molly Yancey and Keith Dent were publicly congratulated in a company-wide Teams chat by Raven Spivey, with affirmation from Taylor-Gilbert, while Plaintiff's comparable contributions went entirely unrecognized.

38.     The thirty (30)-day PDP expired on or around June 28–29, 2025. Defendant did not issue any new or updated PDP following its expiration, nor did Defendant provide Plaintiff with any written notice of further performance deficiencies. On July 3, 2025, COO Cerecedes informed Plaintiff that a meeting would be scheduled to discuss the results of the investigation.

Plaintiff advised Cerecedes that she was working on a time-sensitive report due July 5, 2025, that the office would be closed July 4, 2025, and that she had pre-approved vacation scheduled from July 5 through July 13, 2025. COO Cerecedes sent an "Investigation Closure" email on July 3, 2025, with an attached closure letter, without waiting for the follow-up meeting.

39.     Upon returning from her pre-approved vacation, on July 14, 2025, Plaintiff was summoned to a Microsoft Teams video meeting attended by COO Cerecedes, VP of Finance Laura Meadows, and supervisor Taylor-Gilbert. Rather than discussing the investigation findings as previously indicated, the meeting resulted in Plaintiff's termination. The stated reason for termination was that Plaintiff had not met the expectations of her PDP — a PDP that had expired approximately two weeks earlier, with no specific examples, no objective basis, and no further explanation provided. Plaintiff requested that her termination be put in writing. COO Cerecedes's written response stated only that the termination was "not due to FMLA" — the sole explanation offered to Plaintiff. Plaintiff did not sign any separation agreement, and no offers were made at the time of separation. On the same date, Defendant's co-employer ADP TotalSource issued a formal termination letter to Plaintiff.

40. Defendant subsequently reported to the Kentucky unemployment office that Plaintiff had been discharged for "willful misconduct." Plaintiff appealed this determination. FAHE did not appear at the unemployment appeal hearing. On October 3, 2025, the appeal referee reversed the initial disqualification, finding: "The employer has not presented evidence of misconduct by any definition and there is insufficient evidence on which to base a finding of misconduct warranting forfeiture of benefits." Plaintiff was awarded unemployment benefits accordingly (Appeal Decision No. AD# 2577112AA). Defendant's shifting and pretextual justifications for Plaintiff's termination — including a claim raised during pre-litigation proceedings that Plaintiff lacked authorization to work remotely from Florida, directly contradicted by written documentation and Defendant's own payment of Plaintiff's travel expenses to attend the December 2024 company Christmas party in Kentucky — further demonstrate the bad faith underlying Defendant's adverse employment actions.

41. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered significant damages including, but not limited to: loss of income and benefits since July 14, 2025; loss of future earning

potential; emotional distress, anxiety, loss of sleep, and diminished self-esteem; and physical and mental health impacts requiring medical treatment, including a prescription for Buspirone for stress and depression, progesterone to help manage sleep disturbances resulting from stress, and professional counseling exclusively related to Plaintiff's workplace experiences at Fahe. Plaintiff has not secured new employment since her termination.

42.    Throughout the relevant period, Defendant subjected Plaintiff to demonstrably disparate treatment in comparison to younger and/or male colleagues similarly situated. Among the most egregious examples, younger male colleague Keith Dent was permitted to sleep on the job — observed falling asleep during multiple Loan Servicing Microsoft Teams meetings, at his cubicle while clocked in, and in the lunchroom — and was permitted a flexible schedule without consequence, while Plaintiff was formally disciplined and placed on a performance improvement plan for conduct far less serious. Similarly, co-worker Shelly Coleman, who is younger than Plaintiff and held the same job title, was permitted to leave early on Fridays and work outside normal business hours without consequence, while Plaintiff's written complaint regarding that very conduct resulted in a formal

verbal warning being issued against Plaintiff. Coleman also received formal training, certifications, and professional accommodations that were never offered to Plaintiff.

43.    Defendant also engaged in a pattern of recognizing and rewarding younger colleagues while systematically ignoring Plaintiff's contributions. On June 26, 2025 — the same day Plaintiff followed up with ADP Investigator Moravitz regarding her pending complaint — Raven Spivey publicly congratulated younger colleagues Molly Yancey and Keith Dent in a company-wide Teams chat, with affirmation from Taylor-Gilbert, while Plaintiff's comparable and well-documented contributions to the organization went entirely without acknowledgment. This pattern of selective recognition was consistent throughout Plaintiff's employment under Taylor-Gilbert's supervision. Additionally, Raven Spivey was promoted to Director of Loan Servicing within approximately six (6) months of being hired, a position for which Plaintiff was qualified but was never given the opportunity to pursue.

44.    On June 4 and 5, 2025, Plaintiff utilized approved intermittent FMLA leave. Without Plaintiff's knowledge or request, Defendant coded that time as sick leave rather than FMLA leave. Plaintiff requested that the

classification be corrected on June 6, 2025. In response, HR Specialist Bridget Durham instructed Plaintiff to "stay within your doctor's specifications on how much time can be used monthly" — suggesting that Defendant was actively monitoring and seeking to restrict Plaintiff's use of her lawfully approved FMLA leave. This instruction was directly contrary to Plaintiff's approved FMLA Designation Notice, which authorized leave for up to three (3) episodes per month lasting one to two days per episode.

45.    Defendant further interfered with Plaintiff's FMLA rights by requiring Plaintiff to provide a doctor's note for each and every FMLA-related appointment, without providing proper prior notice of this requirement and in violation of applicable Department of Labor FMLA regulations governing approved intermittent leave. This requirement stood in direct conflict with guidance from ADP TotalSource — Defendant's own co-employer and FMLA administrator — which indicated that Plaintiff need only provide an update on the first Tuesday of each month for time tracking purposes. Defendant's imposition of a per-appointment documentation requirement was applied specifically and selectively to Plaintiff in connection with her FMLA usage, further evidencing Defendant's intent to

interfere with, burden, and ultimately retaliate against Plaintiff for exercising her lawful FMLA rights.

46.     On June 16, 2025, Defendant required Plaintiff to formally sign and acknowledge her May 29, 2025 annual performance review. In her written employee comments accompanying that review, Plaintiff again characterized the evaluation as "retaliatory" and documented her objections to the process and its findings, creating a further contemporaneous record of Plaintiff's protected activity.

47.     Plaintiff is a qualified individual with a disability within the meaning of the ADA and the FCRA. Plaintiff has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), a condition that substantially limits one or more major life activities. Defendant was aware, or should have been aware, of Plaintiff's disability. Defendant nevertheless subjected Plaintiff to heightened scrutiny, disparate treatment, adverse performance actions, and termination against the backdrop of its knowledge of her disability status.

48.     On or about October 1, 2025, approximately two and one-half months after Plaintiff's termination, Defendant posted a job listing for a "Loan Servicing Specialist" — a position functionally equivalent to roles

previously held by Plaintiff. The posting listed minimum qualifications of a High School Diploma or equivalent and one to two years of loan servicing and customer service experience — qualifications that Plaintiff exceeded by a significant margin. This posting is consistent with Defendant having terminated Plaintiff with the intent to replace her with a less qualified, younger, and/or less expensive employee, and further supports the inference that Plaintiff's termination was pretextual.

49. Defendant's own employee handbook, in effect during the relevant period, expressly identified "Requesting or taking leave under the Family and Medical Leave Act" as a protected activity under its anti-retaliation policy. The handbook further stated: "There will be no punishment or retaliation if you, in good faith, report concerns of improper conduct," and that "[a]ny employee, regardless of position or title, who violates this policy against retaliation will be subject to discipline, up to and including termination of employment." Defendant's unlawful treatment of Plaintiff — including issuing her first-ever negative performance evaluation, placing her on a corrective PDP, and ultimately terminating her employment — in direct contravention of these express policy provisions, further demonstrates the pretextual and retaliatory nature of Defendant's conduct.

50.    Defendant's awareness of Plaintiff's Florida residence and its full acceptance of her remote work arrangement throughout her employment is further demonstrated by the fact that Plaintiff was summoned for and served jury duty in DeSoto County, Florida, on February 14, 2025 — a summons issued to her Florida address — and by Plaintiff's formal notification to Defendant's HR department of her Florida address change on February 5, 2025. Defendant raised no objection to Plaintiff's Florida residence or remote work arrangement at any point during her employment. Defendant's post-termination assertion to Plaintiff's prior counsel that Plaintiff lacked authorization to work remotely from Florida is wholly without merit, directly contradicted by the written record, and constitutes yet another pretextual and shifting justification for Plaintiff's unlawful termination.

**COUNT I**
**AGE DISCRIMINATION IN VIOLATION OF THE ADEA**
**(29 U.S.C. § 623(a))**

51.    Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

52.    Plaintiff was over forty years of age, was qualified for her position, and met Defendant's legitimate performance expectations.

53.   Defendant subjected Plaintiff to materially adverse terms and conditions of employment, including heightened scrutiny, unequal discipline, denial of training and advancement opportunities, a pretextual corrective performance plan, and termination.

54.   Defendant treated substantially younger employees more favorably and replaced or sought to replace Plaintiff with a younger and/or less expensive employee.

55.   Plaintiff's age was the but-for cause of Defendant's adverse employment actions.

56.   Defendant's violation was knowing and willful.

57.   Plaintiff suffered lost wages, benefits, and other pecuniary losses as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

A.   Back pay and lost benefits;

B.   Front pay or reinstatement;

C.   Liquidated damages for Defendant's willful violation;

D.   Prejudgment interest to the extent permitted by law;

E.    Reasonable attorney's fees and costs; and

F.    All other legal and equitable relief the Court deems appropriate.

## COUNT II
## RETALIATION IN VIOLATION OF THE ADEA
### (29 U.S.C. § 623(d))

58.    Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

59.    Plaintiff opposed and complained about conduct that she reasonably and in good faith believed constituted unlawful age-based disparate treatment and discrimination.

60.    Defendant knew of Plaintiff's protected opposition and complaints.

61.    After and because of Plaintiff's protected activity, Defendant subjected her to heightened scrutiny, adverse performance documentation, a corrective performance plan, and termination.

62.    A causal connection exists between Plaintiff's protected activity and the materially adverse actions, as shown by their close temporal proximity, escalating discipline, shifting explanations, and other evidence of pretext.

63. Defendant retaliated against Plaintiff in violation of the ADEA.

64. Plaintiff suffered lost wages, benefits, and other pecuniary losses as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

A. Back pay and lost benefits;

B. Front pay or reinstatement;

C. Liquidated damages to the extent authorized by law;

D. Prejudgment interest to the extent permitted by law;

E. Reasonable attorney's fees and costs; and

F. All other legal and equitable relief the Court deems appropriate.

## COUNT III
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### (42 U.S.C. § 12112(a))

65. Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

66. Plaintiff has ADHD, which substantially limits one or more major life activities, and is an individual with a disability within the meaning of the ADA.

67. Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation.

68. Defendant knew or regarded Plaintiff as having a disability.

69. Defendant subjected Plaintiff to heightened scrutiny, adverse performance actions, unequal terms and conditions of employment, and termination because of her disability and/or perceived disability.

70. Defendant's stated reasons were false, inconsistent, and pretextual.

71. Plaintiff suffered economic and non-economic damages as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

    A.    Back pay and lost benefits;

    B.    Front pay or reinstatement;

    C.    Compensatory damages;

    D.    Punitive damages;

    E.    Prejudgment interest;

    F.    Reasonable attorney's fees and costs; and

G.    All other legal and equitable relief the Court deems

appropriate.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ADA
### (42 U.S.C. § 12203(a))

72.    Plaintiff alleges, realleges, and incorporates by reference

Paragraphs 1 through 50 as though fully set forth herein.

73.    Plaintiff opposed and complained about conduct that she

reasonably and in good faith believed constituted disability discrimination

and unlawful treatment associated with her protected medical and leave-

related rights.

74.    Defendant knew of Plaintiff's protected activity.

75.    Defendant thereafter subjected Plaintiff to materially adverse

actions, including adverse evaluations, corrective discipline, heightened

scrutiny, and termination.

76.    Defendant took these actions because of Plaintiff's protected

activity, as demonstrated by temporal proximity, escalating discipline,

shifting explanations, and evidence of pretext.

77.    Plaintiff suffered economic and non-economic damages as a

direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

    A.    Back pay and lost benefits;

    B.    Front pay or reinstatement;

    C.    Compensatory damages;

    D.    Punitive damages;

    E.    Prejudgment interest;

    F.    Reasonable attorney's fees and costs; and

    G.    All other legal and equitable relief the Court deems appropriate.

## COUNT V
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII
### (42 U.S.C. § 2000e-2(a))

78.    Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

79.    Plaintiff is female and is protected from sex discrimination under Title VII.

80.    Plaintiff was qualified for her position and met Defendant's legitimate performance expectations.

81. Defendant subjected Plaintiff to unequal discipline, heightened scrutiny, denial of training and opportunities, adverse performance actions, and termination, while treating similarly situated male employees more favorably.

82. Plaintiff's sex was a motivating factor in Defendant's adverse employment actions.

83. Defendant's stated reasons were false and pretextual.

84. Plaintiff suffered economic and non-economic damages as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

A. Back pay and lost benefits;

B. Front pay or reinstatement;

C. Compensatory damages;

D. Punitive damages;

E. Prejudgment interest;

F. Reasonable attorney's fees and costs; and

G. All other legal and equitable relief the Court deems appropriate.

## COUNT VI
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII
### (42 U.S.C. § 2000e-2(a))

85.    Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

86.    Plaintiff is White and is protected from race discrimination under Title VII.

87.    Plaintiff was qualified for her position and met Defendant's legitimate performance expectations.

88.    Defendant subjected Plaintiff to unequal terms and conditions of employment, adverse performance actions, and termination because of her race.

89.    Plaintiff's race was a motivating factor in Defendant's adverse employment actions, and Defendant's stated reasons were false and pretextual.

90.    Plaintiff suffered economic and non-economic damages as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

      A.    Back pay and lost benefits;

B.    Front pay or reinstatement;

C.    Compensatory damages;

D.    Punitive damages;

E.    Prejudgment interest;

F.    Reasonable attorney's fees and costs; and

G.    All other legal and equitable relief the Court deems appropriate.

## COUNT VII
## RETALIATION IN VIOLATION OF TITLE VII
### (42 U.S.C. § 2000e-3(a))

91.    Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

92.    Plaintiff opposed and complained about conduct that she reasonably and in good faith believed constituted unlawful discrimination based on sex and/or race.

93.    Defendant knew of Plaintiff's protected activity.

94.    Defendant thereafter subjected Plaintiff to materially adverse actions, including heightened scrutiny, adverse performance documentation, corrective discipline, and termination.

95.    Defendant would not have taken these materially adverse actions but for Plaintiff's protected activity.

96.    Plaintiff suffered economic and non-economic damages as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

A.    Back pay and lost benefits;

B.    Front pay or reinstatement;

C.    Compensatory damages;

D.    Punitive damages;

E.    Prejudgment interest;

F.    Reasonable attorney's fees and costs; and

G.    All other legal and equitable relief the Court deems appropriate.

## COUNT VIII
## INTERFERENCE WITH FMLA RIGHTS
### (29 U.S.C. § 2615(a)(1))

97.    Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

98. Plaintiff was an eligible employee, Defendant was a covered employer, and Plaintiff was entitled to intermittent FMLA leave to care for a covered servicemember or veteran with a serious injury or illness.

99. Plaintiff provided sufficient notice and supporting certification, and Defendant approved her intermittent FMLA leave.

100. Defendant interfered with, restrained, and denied Plaintiff's exercise of FMLA rights by, among other things, misclassifying protected absences, altering time records, requiring or forcing use of paid leave in an unlawful or inconsistent manner, imposing burdensome documentation requirements, discouraging leave usage, monitoring or restricting approved leave, and using Plaintiff's leave-related inquiries and absences against her in performance management and termination.

101. Plaintiff was prejudiced by Defendant's interference and suffered lost compensation, benefits, and other actual monetary losses.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

      A. Lost wages, salary, employment benefits, and other compensation;

B.    Actual monetary losses sustained as a direct result of the violation;

C.    Interest;

D.    Liquidated damages;

E.    Equitable relief, including reinstatement or front pay;

F.    Reasonable attorney's fees and costs; and

G.    All other relief authorized by 29 U.S.C. § 2617.

## COUNT IX
### RETALIATION IN VIOLATION OF THE FMLA
### (29 U.S.C. § 2615(a)(2) and 29 C.F.R. § 825.220(c))

102. Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

103. Plaintiff engaged in protected activity by requesting, obtaining, and using intermittent FMLA leave and by opposing and reporting Defendant's interference with her FMLA rights.

104. Defendant knew of Plaintiff's protected activity.

105. Immediately after Plaintiff requested and obtained FMLA leave and complained about its administration, Defendant issued her first negative evaluation, imposed a corrective performance plan, subjected her to escalating scrutiny and discipline, and terminated her employment.

106. Defendant's adverse actions were causally connected to and taken because of Plaintiff's protected FMLA activity, and Defendant's stated reasons were pretextual.

107. Plaintiff suffered lost compensation, benefits, and other actual monetary losses as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

A.    Lost wages, salary, employment benefits, and other compensation;

B.    Actual monetary losses sustained as a direct result of the violation;

C.    Interest;

D.    Liquidated damages;

E.    Equitable relief, including reinstatement or front pay;

F.    Reasonable attorney's fees and costs; and

G.    All other relief authorized by 29 U.S.C. § 2617.

## COUNT X
## AGE DISCRIMINATION IN VIOLATION OF THE FCRA
### (Fla. Stat. § 760.10(1)(a))

108. Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

109. Plaintiff was protected from age discrimination under the FCRA, was qualified for her position, and met Defendant's legitimate performance expectations.

110. Defendant subjected Plaintiff to adverse terms and conditions of employment and terminated her because of her age, while treating substantially younger employees more favorably.

111. Defendant's stated reasons were false and pretextual.

112. Plaintiff suffered economic and non-economic damages as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

A. Back pay and lost benefits;

B. Front pay or reinstatement;

C. Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

D.    Punitive damages as permitted by Florida law;

E.    Prejudgment interest;

F.    Reasonable attorney's fees and costs; and

G.    All other legal and equitable relief the Court deems appropriate.

## COUNT XI
## DISABILITY DISCRIMINATION IN VIOLATION OF THE FCRA
### (Fla. Stat. § 760.10(1)(a))

113.  Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

114.  Plaintiff has a handicap or disability protected by the FCRA and was qualified to perform the essential functions of her position.

115.  Defendant knew or regarded Plaintiff as having a disability and subjected her to adverse terms and conditions of employment and termination because of that disability or perceived disability.

116.  Defendant's stated reasons were false and pretextual.

117.  Plaintiff suffered economic and non-economic damages as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

A.    Back pay and lost benefits;

B.    Front pay or reinstatement;

C.    Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

D.    Punitive damages as permitted by Florida law;

E.    Prejudgment interest;

F.    Reasonable attorney's fees and costs; and

G.    All other legal and equitable relief the Court deems appropriate.

## COUNT XII
## SEX DISCRIMINATION IN VIOLATION OF THE FCRA
### (Fla. Stat. § 760.10(1)(a))

118.  Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

119.  Plaintiff is female, was qualified for her position, and met Defendant's legitimate performance expectations.

120.  Defendant subjected Plaintiff to adverse terms and conditions of employment and termination because of her sex, while treating similarly situated male employees more favorably.

121.  Defendant's stated reasons were false and pretextual.

122. Plaintiff suffered economic and non-economic damages as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

A.    Back pay and lost benefits;

B.    Front pay or reinstatement;

C.    Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

D.    Punitive damages as permitted by Florida law;

E.    Prejudgment interest;

F.    Reasonable attorney's fees and costs; and

G.    All other legal and equitable relief the Court deems appropriate.

## COUNT XIII
## RACE DISCRIMINATION IN VIOLATION OF THE FCRA
### (Fla. Stat. § 760.10(1)(a))

123. Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

124. Plaintiff is White, was qualified for her position, and met Defendant's legitimate performance expectations.

125. Defendant subjected Plaintiff to adverse terms and conditions of employment and termination because of her race.

126. Defendant's stated reasons were false and pretextual.

127. Plaintiff suffered economic and non-economic damages as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

A.  Back pay and lost benefits;

B.  Front pay or reinstatement;

C.  Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

D.  Punitive damages as permitted by Florida law;

E.  Prejudgment interest;

F.  Reasonable attorney's fees and costs; and

G.  All other legal and equitable relief the Court deems appropriate.

## COUNT XIV
## RETALIATION IN VIOLATION OF THE FCRA
### (Fla. Stat. § 760.10(7))

128. Plaintiff alleges, realleges, and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

129. Plaintiff opposed and complained about conduct that she reasonably and in good faith believed constituted discrimination prohibited by the FCRA, including discrimination based on age, disability, sex, and/or race.

130. Defendant knew of Plaintiff's protected activity.

131. Defendant thereafter subjected Plaintiff to materially adverse actions, including heightened scrutiny, adverse performance documentation, corrective discipline, and termination.

132. Defendant would not have taken these materially adverse actions but for Plaintiff's protected activity.

133. Plaintiff suffered economic and non-economic damages as a direct and proximate result.

WHEREFORE, Plaintiff, JOYCE M. HUFFMAN-WHITE, demands judgment against Defendant and requests the following relief:

A.    Back pay and lost benefits;

B.   Front pay or reinstatement;

C.   Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

D.   Punitive damages as permitted by Florida law;

E.   Prejudgment interest;

F.   Reasonable attorney's fees and costs; and

G.   All other legal and equitable relief the Court deems appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated this 22th day of July 2026.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Imler Law
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Attorneys for Plaintiff